146 T.C. No. 6

UNITED STATES TAX COURT

WHISTLEBLOWER 22716-13W, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22716-13W.                    Filed March 14, 2016.

P filed Form 211, Application for Award for Original Information, with the IRS Whistleblower Office with respect to TP1. By guilty plea, TP1 agreed to pay an FBAR civil penalty substantially in excess of $2,000,000 and a small amount of restitution, reflecting unpaid Federal income tax on income derived from Swiss bank accounts.

A whistleblower is eligible for a nondiscretionary award under I.R.C. sec. 7623(b) only "if the tax, penalties, interest, additions to tax, and additional amounts in dispute exceed $2,000,000." I.R.C. sec. 7623(b)(5)(B). FBAR civil penalties are imposed and collected under 31 U.S.C. sec. 5321 (2006), not under the Internal Revenue Code. R contends that FBAR payments do not constitute "additional amounts" for purposes of ascertaining whether the $2,000,000 threshold has been met.

1. <u>Held</u>: The term "additional amounts" as used in I.R.C. sec. 7623(b)(5)(B) means the civil penalties set forth in c. 68, subch. A, of

the Internal Revenue Code, captioned "Additions to the Tax and Additional Amounts."

2.  Held, further, FBAR civil penalties are not "additional amounts" within the meaning of I.R.C. sec. 7623(b)(5)(B), and they are not "assessed, collected, * * * [or] paid in the same manner as taxes." I.R.C. sec. 6665(a)(1). FBAR payments must therefore be excluded in determining whether the $2,000,000 "amount in dispute" requirement has been satisfied.

Robert F. Katzburg and William M. Sharp, for petitioner.[*]

Ashley M. Bender and John T. Arthur, for respondent.


OPINION


LAUBER, Judge:  This whistleblower award case is before the Court on a motion for summary judgment filed by the Internal Revenue Service (IRS or respondent).  A whistleblower is eligible for a nondiscretionary award under section 7623(b) only "if the tax, penalties, interest, additions to tax, and additional amounts in dispute exceed $2,000,000." Sec. 7623(b)(5)(B).[1]  The IRS collected

---

[*]Brief amicus curiae was filed by Dean Zerbe and Stephen M. Kohn as attorneys for the National Whistleblowers Center.

[1]All statutory references are to the Internal Revenue Code (Code or Title 26) in effect at the relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts are rounded to the nearest dollar.

from the taxpayer who is the subject of this whistleblower claim a multi-million-dollar civil penalty for failing to file Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts (Foreign Bank Account Report or FBAR), under 31 U.S.C. sec. 5321(a) (2006). The question we must decide is whether this FBAR payment constitutes an "additional amount" for purposes of ascertaining whether the $2,000,000 threshold has been met. We hold that it does not. We will accordingly grant respondent's motion for summary judgment.

## Background

Petitioner in 2010 filed Form 211, Application for Award for Original Information, with the IRS Whistleblower Office (Office).[2] On the application he asserted that he was cooperating with the Department of Justice and the IRS Criminal Investigation Division in connection with the ongoing investigation of two Swiss bankers, Martin Lack and Renzo Gadola. Petitioner alleged that his cooperation with those agencies had led to, and would lead to more, information about these bankers' involvement in tax evasion by U.S. persons having undeclared offshore

---

[2]The Court granted petitioner's motion to proceed anonymously. In an effort to preserve petitioner's anonymity, the parties in their briefs and other filings refer to the U.S. taxpayer who is the subject of the relevant whistleblower claim as "Taxpayer 1." We will employ the same convention in this Opinion. When referring to Taxpayer 1 and to petitioner, we will employ the masculine pronoun and possessive adjective without intending to create any implication concerning the gender of either person.

financial accounts.  The Office notified petitioner that it had received the Form 211 and had assigned unique claim numbers to his claims regarding the two bankers.

On August 23, 2011, petitioner filed with the Office a third claim for an award, which is the subject of the present controversy.  Petitioner filed this claim after learning that Taxpayer 1 had agreed to pay a substantial penalty in conjunction with a guilty plea for filing a false tax return.  Taxpayer 1 admitted that Gadola had helped him open Swiss bank accounts to conceal his income and assets from U.S. authorities.  By the guilty plea, Taxpayer 1 agreed to pay an FBAR civil penalty substantially in excess of $2,000,000 and a small amount of restitution, reflecting unpaid Federal income tax on income derived from the Swiss bank accounts.  Petitioner claimed entitlement to an award based upon the aggregate amount paid by Taxpayer 1, given petitioner's alleged involvement in Gadola's arrest, which allegedly led to Taxpayer 1's arrest.

During its review of the Taxpayer 1 claim, the Office informed petitioner that it had received a legal opinion from the IRS Office of Chief Counsel concluding that FBAR penalty payments, because they are made pursuant to Title 31 rather than Title 26 of the U.S. Code, are not "collected proceeds" eligible for a nondiscretionary award under section 7623(b)(1).  See Scope of Awards Payable

Under I.R.C. Section 7623, PMTA 2012-10.  Viewing this as a de facto denial of his Taxpayer 1 claim, petitioner sought immediate review in this Court.  We granted respondent's motion to dismiss that case for lack of jurisdiction, concluding that the Office had not made, as of the time petitioner filed that petition, a "determination regarding an award" sufficient to confer jurisdiction on this Court.  See Whistleblower 22231-12W v. Commissioner, T.C. Memo. 2014-157.

On September 6, 2013, the Office issued petitioner a final determination letter informing him that his Taxpayer 1 claim had been denied.  The letter stated two grounds for the denial:  (1) the Government had obtained complete information about Taxpayer 1's offshore accounts directly from the Swiss bank, without any assistance from petitioner; and (2) petitioner in any event could not qualify for a nondiscretionary award because his claim did not meet the $2,000,000 threshold.  Believing that FBAR payments do not constitute "tax, penalties, interest, additions to tax, * * * [or] additional amounts" within the meaning of section 7623(b)(5)(B), the Office concluded that the amount in dispute with respect to the Taxpayer 1 claim, resolving all doubts in petitioner's favor, could not exceed $50,000.

Petitioner timely petitioned this Court for review of this determination denying his award.  Respondent filed an answer raising the section 7623(b)(5)(B) dol-

lar threshold as an affirmative defense.[3]  On May 29, 2015, respondent moved for summary judgment on the basis of petitioner's alleged failure to satisfy section 7623(b)(5)(B).  The Court has received thorough briefing from the parties on this subject, as well as a brief amicus curiae from the National Whistleblowers Center (NWC), to which both parties have responded.

## Discussion

### I.    Standard of Review

The purpose of summary judgment is to expedite litigation and avoid unnecessary and expensive trials.  See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001).  We may grant summary judgment when there is no genuine dispute concerning any material fact and a decision may be rendered as a matter of law.  Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002).  The parties agree on all questions of fact affecting the application of section 7623(b)(5)(B), and the proper interpretation of that provision presents a pure

_____

[3]Respondent initially moved to dismiss this case for lack of jurisdiction, contending that the section 7623(b)(5)(B) "amount in dispute" requirement was jurisdictional.  This Court subsequently rejected that argument in Lippolis v. Commissioner, 143 T.C. 393, 397 (2014), holding that section 7623(b)(5)(B) affords the IRS only an affirmative defense.  On April 6, 2015, respondent moved to withdraw his motion to dismiss for lack of jurisdiction, citing this Court's holding in Lippolis, and we granted that motion.  Respondent filed his answer on April 6, 2015, raising as an affirmative defense that petitioner's claim does not satisfy the $2,000,000 requirement.

question of law. We conclude that the question presented by respondent's motion is appropriate for summary adjudication.[4]

## II. Governing Statutory Framework

### A. The Whistleblower Statute

The IRS has long had authority to pay awards to persons, now called "whistleblowers," who provide information leading to the recovery of unpaid taxes. The Code now provides for two types of whistleblower awards: discretionary and non-discretionary. The former derive from legislation enacted in 1867, which authorized the Secretary "to pay such sums * * * as may in his judgment be deemed necessary for detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws, or conniving at the same." Act of Mar. 2, 1867, ch. 169, sec. 7, 14 Stat. at 473. This provision, reenacted without much change as section 7623(a), authorizes the IRS to pay such sums as it "deems necessary" and mandates that such payments "shall be paid from the proceeds of

---

[4]Respondent has not sought summary judgment on his alternative basis for denying petitioner's claim, namely, that petitioner's information did not "substantially contribute to" the recovery from Taxpayer 1. See sec. 7623(b)(1); Whistleblower One 10683-13W, 145 T.C. __, __ (slip op. at 5) (Sept. 16, 2015) (noting that whistleblowers are entitled to an award only if there was a collection of proceeds "attributable in some way to the information that * * * [they] provided"). Because we rule for respondent under section 7623(b)(5)(B), we need not address his alternative basis for denial, which appears to raise at least one dispute of material fact.

amounts collected." The IRS' determinations with respect to these discretionary awards are not subject to judicial review. See, e.g., DaCosta v. United States, 82 Fed. Cl. 549 (2008); Conner v. United States, 76 Fed. Cl. 86 (2007); Destefano v. United States, 52 Fed. Cl. 291 (2002); see also Lippolis v. Commissioner, 143 T.C. 393, 399 (2014); Whistleblower 11332-13W v. Commissioner, 142 T.C. 396, 400 (2014).

The second type of whistleblower award, set forth in section 7623(b), was introduced by the Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, sec. 406, 120 Stat. at 2958-2960. Section 7623(b) provides for nondiscretionary (i.e., mandatory) awards if specified dollar thresholds and other requirements are met. Under section 7623(b)(5), a whistleblower is eligible for a nondiscretionary award with respect to any action--

> (A) against any taxpayer, but in the case of any individual, only if such individual's gross income exceeds $200,000 for any taxable year subject to such action, and

> (B) if the tax, penalties, interest, additions to tax, and additional amounts in dispute exceed $2,000,000.

If these monetary thresholds are met and the Government recovers "collect-ed proceeds" attributable to the whistleblower's information, the whistleblower will, subject to certain conditions, receive an award. This award will be "at least

15 percent but not more than 30 percent of the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such action." Sec. 7623(b)(1); see Cooper v. Commissioner, 136 T.C. 597, 600 (2011). If a claim does not satisfy the dollar thresholds of section 7623(b)(5), the IRS retains discretion to pay an award under subsection (a), but it is not required to pay an award under subsection (b).

B.      FBAR Civil Penalties

Congress passed the Bank Secrecy Act (BSA), 31 U.S.C. secs. 5311-5332 (2006), to advance a variety of regulatory and investigative objectives, including detection and prosecution of criminal activity and enforcement of laws under the jurisdiction of the Department of the Treasury. See id. sec. 5311; United States v. Simonelli, 614 F. Supp. 2d 241, 241 (D. Conn. 2008). The BSA requires (among other things) that U.S. persons who have interests in (or authority over) bank or financial accounts in foreign countries must report information about those accounts to the Federal Government. An FBAR is the required vehicle for making this disclosure. As relevant here, U.S. persons who hold one or more foreign financial accounts with an aggregate value exceeding $10,000 must file an FBAR

with the Commissioner reporting the existence and value of the accounts.  See 31

U.S.C. sec. 5314(a); 31 C.F.R. secs. 1010.350, 1010.306(c) (2011).

While "the obligation to file an FBAR arises under Title 31, individual tax-

payers subject to the FBAR reporting requirements are alerted to this requirement

in the preparation of annual Federal income tax returns."  Staff of J. Comm. on

Taxation, Technical Explanation of H.R. 4213, JCX-60-09, at 144 (Dec. 8, 2009).

The Form 1040, U.S. Individual Income Tax Return, currently includes at the

bottom of Schedule B, Interest and Ordinary Dividends, the following question:

"At any time during * * * [the taxable year] did you have a financial interest in or

signature authority over a financial account (such as a bank account, securities

account, or brokerage account) located in a foreign country?"  A taxpayer who

checks the "yes" box is directed to instructions concerning his obligation "to file

* * * Report of Foreign Bank and Financial Accounts (FBAR), to report that

financial interest or signature authority."[5]

The BSA requires covered persons to file the FBAR with the Department of

the Treasury, but not to remit money or property.  The FBAR form specifically in-

---

[5]During the period relevant to this case, individuals were required to make
FBAR reports on TD F 90-22.1, a Department of the Treasury form.  On
September 30, 2013, the Department's Financial Crimes Enforcement Network
(FinCEN) announced that FBAR reports would thenceforth be made on FinCEN
Report 114.  Form 1040, Schedule B, now refers taxpayers to the latter form.

structs filers: "Do NOT file with your Federal Tax Return." As relevant here, the BSA imposes no pecuniary burden on covered persons, only the requirement that they file an FBAR.

A person who fails to file a required FBAR may be assessed a civil monetary penalty. 31 U.S.C. sec. 5321(a)(5)(A). The amount of the penalty is capped at $10,000 unless the failure was willful. See id. subparas. (B)(i), (C). If the failure was willful, the maximum penalty increases to $100,000 or half the value of the foreign bank account at the time of the violation, whichever is greater. Ibid. In either case, whether to impose the penalty and the amount of the penalty are committed to the discretion of the Secretary. See id. subpara. (A) ("The Secretary of the Treasury may impose a civil money penalty[.]"); id. subpara. (B) ("the amount of any civil penalty * * * shall not exceed" the statutory ceiling).

The FBAR civil penalty may be assessed "at any time before the end of the six-year period beginning on the date of the transaction with respect to which the penalty is assessed." 31 U.S.C. sec. 5321(b)(1). The Government may commence a civil action to recover an assessed FBAR penalty at any time before the end of the two-year period beginning on the later of (a) the date the penalty was assessed or (b) the date any judgment becomes final in a related criminal action. See id. para. (2); United States v. Williams, 489 F. App'x 655 (4th Cir. 2012); Moore v.

United States, 2015 WL 1510007 (W.D. Wash. Apr. 1, 2015); United States v. McBride, 908 F. Supp. 2d 1186 (D. Utah 2012).

Authority to enforce BSA requirements, including imposition of FBAR civil penalties, was initially delegated to the Financial Crimes Enforcement Network (FinCEN), a bureau of the Department of the Treasury. FinCEN's overall mission is to collect and analyze information about financial transactions in order to combat money laundering, terrorist financing, and other financial crimes. See 31 U.S.C. sec. 5311; Simonelli, 614 F. Supp. 2d at 241. Through a memorandum of agreement between FinCEN and the IRS, authority to administer the FBAR regime has been redelegated to the Commissioner. See 31 C.F.R. sec. 1010.810(g) (2011). The Secretary recommended this redelegation in part because "the FBAR is directed more towards tax evasion, as opposed to money laundering or other financial crimes, that lie at the core mission of FinCEN." FinCEN, Report to Congress in Accordance with Section 361(b) of the USA PATRIOT Act, at 4 (Apr. 24, 2003).

The authority thus delegated to the Commissioner is broad, giving the IRS the power to assess and collect civil penalties for noncompliance with FBAR re-quirements, investigate possible violations, employ summons power, issue admin-istrative rulings, and take "any other action reasonably necessary" to implement

and enforce the FBAR regime.  31 C.F.R. sec. 1010.810(g); see also FinCEN, Report to Congress in Accordance with Section 361(b) of the USA PATRIOT Act, at 5 (Apr. 8, 2005) (delegation allows IRS "to create interpretive education outreach materials for the FBAR, revise the form and instructions, examine individuals and other entities, and assess civil penalties for violations").

III.   Analysis

A.    "Additional Amounts"

Section 7623(b)(5) makes a whistleblower eligible for a nondiscretionary award only if his claim satisfies two monetary thresholds.  The parties appear to agree that Taxpayer 1's gross income exceeded $200,000.  See sec. 7623(b)(5)(A).  In order to prevail, therefore, petitioner must show that "the tax, penalties, interest, additions to tax, and additional amounts in dispute exceed $2,000,000" with respect to his Taxpayer 1 claim.  See sec. 7623(b)(5)(B).  Petitioner does not contend that FBAR payments constitute "tax," "interest," or "additions to tax," nor does he contend that they are "penalties" under the Internal Revenue Code.  The focus of the parties' dispute, and the question we must decide, is whether FBAR

payments constitute "additional amounts" within the meaning of section

7623(b)(5)(B).[6]

In deciding the proper interpretation of "additional amounts" as used in this

section, the starting point is the language of the statute.  Greyhound Corp. v. Mt.

Hood Stages, Inc., 437 U.S. 322, 330 (1978).  Where Congress uses a term of art

that has acquired an established meaning over a long period, Congress presumably

intends that meaning when it uses that term.  See, e.g., Morissette v. United States,

342 U.S. 246, 263 (1952); cf. Direct Mktg. Ass'n v. Brohl, 571 U.S. __, __, 135 S.

Ct. 1124, 1129-1130 (2015) (applying this principle to define for tax purposes the

terms "assessment," "levy," and "collection"); 1836 S St. Tenants Ass'n, Inc. v.

Estate of B. Battle, 965 A.2d 832, 839 (D.C. 2009) ("When a legislature borrows

common law terms of art in writing legislation, 'it presumably knows and adopts

---

[6]Respondent also advances the broader contention that whistleblower awards are payable only for recoveries under "the internal revenue laws."  See sec. 7623(a)(2).  Because FBAR penalties are paid under Title 31, respondent argues that they are not "collected proceeds" under section 7623(b)(1).  Since we rule for respondent under the affirmative defense in section 7623(b)(5)(B), we need not address this alternative contention.  We note that the IRS Chief Counsel opinion issued during the consideration of petitioner's case acknowledges one type of payment made outside of Title 26 that does constitute "collected proceeds."  That opinion notes that "[t]he IRS assesses and collects in the same manner as tax any criminal restitution ordered" in a criminal case, and that "any such restitution should be included as 'collected proceeds' for purposes of section 7623, even though ordered pursuant to Title 18."  See supra p. 4.

the cluster of ideas that were attached to [the] borrowed word[s].'" (alteration in original) (quoting 1618 Twenty-First St. Tenants' Ass'n v. The Phillips Collection, 829 A.2d 201, 203 (D.C. 2003)).  Where the same word or phrase appears multiple times within a statutory text, it is generally presumed to have the same meaning each place it appears.  See, e.g., Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932) ("Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning."); Rand v. Commissioner, 141 T.C. 376, 385 (2013) (same).

The term "additional amounts," when used in a series that also includes the words "tax" and either "additions to tax" or "additions to the tax," appears nearly 40 times in the Internal Revenue Code.[7]  Elsewhere in the U.S. Code, the term "additional amount" appears in a series of this sort only twice; in both instances, the provision in which it appears is captioned "Taxes."  See 22 U.S.C. sec. 1631k(d) (2006) (defining "tax[es]" to include specified taxes "and also any interest, penalty, additional amount, or addition thereto"); 50 U.S.C. sec. 4333 (2006) (same).

_____

[7]Such appearances include sections, 692(a)(2), 860, 3121(l)(1)(A), 4961(a), 6155(a), 6159(c)(1), 6201(a), 6202, 6214, 6221, 6226, 6229, 6230, 6242, 6247(c), 6321, 6324A(a), 6404, 6423(d)(2), 6503(f)(2)(B), 6601(e)(2), 6602, 6665, 6751, 6851(a)(1), 6852(a)(1)(B), 6861(a), 6862, 6871, 6902(b), 7122, 7463(e), 7485, 7491, 7508, 7508A, and 7522(a).

"Additional amounts" and "additions to the tax" are terms of art in the Internal Revenue Code. Chapter 68 of the Code is captioned "Additions to the Tax, Additional Amounts, and Assessable Penalties." Subchapter A of chapter 68 is captioned "Additions to the Tax and Additional Amounts." This subchapter includes 13 sections, including the additions to tax for failure timely to file a return or timely pay tax, the accuracy-related penalty under section 6662, and the fraud penalty under section 6663. Section 6665, the last section in this subchapter, is captioned "Applicable Rules." It states that, except as otherwise provided in Title 26, "the additions to the tax, additional amounts, and penalties provided by this chapter shall be * * * assessed, collected, and paid in the same manner as taxes" and that "any reference in this title to 'tax' imposed by this title shall be deemed also to refer to the additions to the tax, additional amounts, and penalties provided by this chapter."

Given this statutory structure, we have repeatedly held that the term "additional amounts" has a technical meaning in the Code, referring specifically to penalties set forth in chapter 68, subchapter A. For example, in Bregin v. Commissioner, 74 T.C. 1097, 1101 (1980), we had to determine whether we had jurisdiction in a deficiency case to consider an IRS claim for an erroneous refund. Under section 6214(a), this Court has jurisdiction "to redetermine the correct

amount of the deficiency even if the amount so redetermined is greater than the amount of the deficiency * * * and to determine whether any additional amount, or any addition to the tax should be assessed, if claim therefor is asserted by the Secretary at or before the hearing." The IRS urged that the term "additional amount" be construed broadly enough to include the erroneous refund it sought to recover from the taxpayer.

We disagreed. We noted that "[t]he term 'additional amount' appears in chapter 68 of the Internal Revenue Code of 1954, which relates to 'Additions to the Tax, Additional Amounts, and Assessable Penalties.'" 74 T.C. at 1102-1103. We concluded that the term "additional amounts" as used in chapter 68 means one of the civil penalties referred to in that chapter and "that the same meaning was intended in section 6214(a), especially since it refers to both additional amounts and additions to the tax." Id. at 1103. Our review of the legislative history confirmed that the term "additional amounts" as used in section 6214(a) was "intended only to refer to claims for the civil penalties." Ibid.

In Pen Coal Corp. v. Commissioner, 107 T.C. 249 (1996), we had to decide whether we had jurisdiction to redetermine a corporate taxpayer's liability for interest computed at the increased rate prescribed by section 6621(c). The taxpayer contended that section 6214(a) gave the Court jurisdiction on the theory

that "such interest constitutes an 'additional amount' within the meaning of section 6214(a)." Id. at 255-256. Relying on our analysis in Bregin we rejected this argument, concluding: "Congress used the phrase 'any additional amount, or any addition to the tax' in section 6214(a) to ensure an understanding that this Court's jurisdiction encompasses items that are to be assessed, collected, and paid in the same manner as taxes, including the additions to tax and other additional amounts * * * described in chapter 68." Id. at 258; cf. El v. Commissioner, 144 T.C. 140, 148 (2015) (holding that the "additional tax" imposed by section 72(t)(1) is not a "penalty, addition to tax, or additional amount" within the meaning of section 7491(c)).

In Williams v. Commissioner, 131 T.C. 54 (2008), we ruled that FBAR penalties do not constitute "additional amounts" for purposes of our deficiency or CDP jurisdiction. The taxpayer there sought redetermination of tax deficiencies for certain years and also asked us to "abate" FBAR penalties allegedly imposed for his failure to disclose Swiss bank accounts. Id. at 55. We held that we lacked jurisdiction over the FBAR penalties, noting that they "are authorized in Title 31 ('Money and Finance') of the United States Code, not Title 26 (the Internal Revenue Code)." Id. at 56. The taxpayer "d[id] not point to any grant of jurisdiction to this Court that would extend to FBAR penalties," and we found none. Id. at 57.

We noted that the term "tax" is defined for purposes of our CDP jurisdiction "to include 'additions to the tax, additional amounts, and penalties provided by'" chapter 68.  Id. at 59 n.6 (quoting section 6665(a)(2)).  But "we * * * [were] aware of no statute that would expand 'tax' as used in the lien and levy statutes in Title 26 to include the FBAR penalty of Title 31."  Ibid.

As these cases show, we have consistently held that "additional amounts," particularly when it appears in a series that also includes "tax" and "additions to tax," is a term of art that refers exclusively to the civil penalties enumerated in chapter 68, subchapter A.  "Additional amounts" appears in section 7623(b)(5)(B) in conjunction with "tax" and "additions to tax," and we find no reason to give that term a different meaning in this section than it has elsewhere.  In Williams, we ruled that an FBAR civil penalty is not an "additional amount" for purposes of our deficiency or CDP jurisdiction.  Petitioner has supplied no textual basis, either in the language of the statute or the structure of the Code, for reaching a different conclusion with respect to the whistleblower provision at issue here.

FBAR civil penalties are not among the tax-related penalties enumerated in chapter 68, and they are not "assessed, collected, and paid in the same manner as taxes."  Sec. 6665(a)(1); see Moore, 2015 WL 1510007, at *8  ("In contrast to well-worn procedures for assessing tax deficiencies, a person searching the Code

of Federal Regulations or United States Code for information on the procedure for FBAR penalty assessment will come up nearly empty-handed."). FBAR penalties are not "additional amounts" within the meaning of section 7623(b)(5)(B), and they must be excluded in determining whether the $2,000,000 "amount in dispute" requirement has been satisfied.[8]

B. Petitioner's Contentions

1. "Structural" Arguments

Petitioner and amicus curiae NWC argue that the term "additional amounts" as used in section 7623(b)(5)(B) means, in essence, "other sums of money." But they point to no other Code section in which "additional amounts" has this broad and virtually limitless meaning. And they offer no convincing rebuttal to the canons of construction dictating that terms of art be given a consistent meaning in a

---

[8]Section 7623(b)(1) provides for nondiscretionary awards if the Secretary proceeds with an "action described in subsection (a)," and subsection (a) authorizes payment only "where such expenses are not otherwise provided for by law." Noting that 31 U.S.C. sec. 5323(a) authorizes the Secretary to pay rewards to persons who provide information leading to recovery of FBAR penalties, respondent urges that FBAR informant awards are "otherwise provided for by law." Petitioner disagrees, noting that rewards under 31 U.S.C. sec. 5323(a) are discretionary whereas rewards under section 7623(b)(1) would be mandatory. Because we rule for respondent under section 7623(b)(5), we need not address this alternative theory. Respondent also contends that FBAR recoveries, because deposited into the Department of the Treasury's General Fund, are not "available for" whistleblower awards. See sec. 7623(a). We need not address this argument either.

statutory text and that a technical word or phrase is presumed to have the same meaning each place it appears. Rather than focus on the subparagraph at issue, petitioner and NWC emphasize language appearing elsewhere in the statute, urging that these broader meanings be imported into section 7623(b)(5)(B). But they provide no textual support for doing this, only vague appeals to the statute's "overall structure."

Petitioner and NWC note that section 7623(a) authorizes the Secretary to pay such sums as he deems necessary, from the "proceeds of amounts collected," to detect persons guilty of violating the tax laws "or conniving at the same." FBAR civil penalties, they urge, are reasonably embraced within "proceeds of amounts collected" from persons "conniving at" such violations. Indeed, the record in this case indicates that the Office, prior to 2009, did pay discretionary awards under section 7623(a) based on FBAR recoveries, and nothing in this Opinion would prevent the Secretary from doing so in the future. The question at hand is whether petitioner is eligible for a nondiscretionary award under section 7623(b), and that depends on whether "the tax, penalties, interest, additions to tax, and additional amounts in dispute exceed $2,000,000." The broader language of section 7623(a) provides no justification for giving the term "additional amounts" in section 7623(b)(5)(B) a meaning that it has nowhere else in the Code.

Petitioner next observes that section 7623(b)(1) computes nondiscretionary awards as a percentage of "the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action." Congress' use of the word "including" shows that the ensuing list (which notably omits the word "tax") is not exhaustive. See sec. 7701(c); Dunaway v. Commissioner, 124 T.C. 80, 91-92 (2005). And the Supreme Court observed long ago that the word "proceeds" is "of great generality." Phelps v. Harris, 101 U.S. (11 Otto) 370, 380 (1879). Petitioner urges that the term "collected proceeds" is broad enough to include FBAR penalties collected by the IRS, even though they are paid under Title 31 and even if they do not constitute tax, penalties, interest, additions to tax, or additional amounts under Title 26.

While this argument is not without force, we do not see how it affects the proper textual analysis of section 7623(b)(5)(B). Congress could have employed, but did not employ, the term "collected proceeds" when drafting the $2,000,000 monetary threshold. And it did not use the word "including." Instead, Congress explicitly and unambiguously provided that a whistleblower is eligible for a nondiscretionary award only "if the tax, penalties, interest, additions to tax, and additional amounts in dispute" exceed $2,000,000.

"[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n.9 (2004) (quoting 2A N. Singer, Statutes and Statutory Construction, sec. 46:06, at 194 (6th rev. ed. 2000)). We have no occasion in this case to decide whether "collected proceeds" as used in section 7623(b)(1) is broad enough to include civil penalties paid for violation of Title 31. See supra note 6. Even if that question were answered in the affirmative, petitioner could not qualify for a nondiscretionary award computed on that broader base unless he first satisfied the section 7623(b)(5)(B) monetary threshold. He cannot do this because FBAR civil penalties do not constitute "additional amounts" within the meaning of that section.

As petitioner notes, courts may rely on a statute's structure as an aid to interpreting its specific terms. See generally Abramski v. United States, 573 U.S. __, __, 134 S. Ct. 2259, 2267 (2014). But reliance on context and structure in statutory interpretation is a "subtle business, calling for great wariness lest what professes to be mere rendering becomes creation and attempted interpretation of legislation becomes legislation itself." Palmer v. Massachusetts, 308 U.S. 79, 83 (1939); Yari v. Commissioner, 143 T.C. 157, 165 n.5 (2014) ("[T]he process of divining the legislative intent underlying a statute's * * * structure, while subject

to canons of construction and well-established methodologies, is hardly an exact science."). In the absence of specific statutory language linking the potentially broader terms of subsections (a) and (b)(1) to the affirmative defense of subsection (b)(5)(B), we are not at liberty to give "additional amounts"--a term of art with a long-established meaning--a meaning that it has nowhere else in the Internal Revenue Code.[9]

### 2. Policy Arguments

Because FBAR civil penalties are "administered by the IRS, are reported alongside income tax returns, and have a tax-related purpose," petitioner contends that "they are, in effect, 'internal revenue laws,' and should be treated as such when construing Section 7623's scope." Given the IRS' important role in FBAR administration, at least one court has found that the Internal Revenue Code and the FBAR provisions of Title 31 are "related statutes." Hom v. United States, 2013 WL 5442960 (N.D. Cal. Sept. 30, 2013). According to petitioner, IRS closing agreements settling offshore voluntary disclosure cases have provided that, "in

---

[9]Congress did create links between other parts of section 7623. For example, Congress explicitly linked subsection (b)(1) to subsection (a), mandating an award "[i]f the Secretary proceeds with any administrative or judicial action described in subsection (a)." Congress clearly knows how to create such links when it intends to do so. For whatever reason, it did not create links of the sort petitioner desires between subsection (b)(5) and the rest of the statute.

lieu of" an FBAR penalty, the IRS "may assess under Title 26 of the United States Code a miscellaneous penalty" in an agreed-upon amount. Given the close connections between the FBAR regime and tax enforcement, petitioner and NWC urge that treating FBAR penalties the same as taxes is a sensible policy.

The failure to treat FBAR penalties as taxes, petitioner continues, could undercut the effectiveness of the whistleblower law. At a time when undisclosed offshore accounts constitute a major form of tax evasion, FBAR penalties, which can range as high as 50% of the offshore account balance annually, may often dwarf the income tax liabilities generated by the earnings from that account. If FBAR penalties do not count toward the $2,000,000 monetary threshold, whistle-blowers will allegedly have little incentive to blow the whistle on these schemes, frustrating Congress' intent in enacting this law.

Petitioner notes that the IRS and the Department of Justice have great dis-cretion in negotiating settlements and plea agreements. If a case involving undis-closed offshore accounts also involves large potential income tax liabilities, the Government may elect to compromise the latter, effectively directing most of the proceeds into the FBAR penalty bucket. If FBAR proceeds do not count toward the $2,000,000 monetary threshold, petitioner fears that the Government could

unilaterally make deserving whistleblowers ineligible for section 7623(b) awards by the manner in which it settles cases.[10]

To the extent these concerns have force, they are directed to the wrong forum. There are indisputably strong practical connections between the FBAR regime and tax enforcement; that is presumably what persuaded the Secretary to redelegate FBAR administrative authority to the IRS. But our task is to decide whether FBAR penalties constitute "tax, penalties, interest, additions to tax, * * * [or] additional amounts" within the meaning of section 7623(b)(5)(B). Departmental delegation orders and the practical issues petitioner raises shed no meaningful light on the proper interpretation of this text. The IRS has broad discretion in deciding whether to pursue a taxpayer identified by a whistleblower and in determining how such cases shall be resolved. We lack jurisdiction to address these matters. Cohen v. Commissioner, 139 T.C. 299, 302 (2012), aff'd, 550 F. App'x 10 (D.C. Cir. 2014); see Lichtman v. United States, 316 F. App'x

---

[10]As noted earlier, petitioner contends that the IRS often settles offshore voluntary disclosure cases by requiring the taxpayer, in lieu of paying an FBAR penalty, to pay "under Title 26 of the United States Code a miscellaneous penalty" in an agreed-upon amount. See supra p. 24; see also Offshore Voluntary Disclosure Program Frequently Asked Questions and Answers 2014, Q&A 7. If the penalties thus paid constitute "penalties" within the meaning of section 7623(b)(5)(B)--a point the parties have not addressed because Taxpayer 1 did not settle his case under those procedures--this manner of settling cases, far from hurting whistleblowers, would seem to help them.

116, 119 (3d Cir. 2008) ("[T]he IRS's decision to investigate or not investigate a particular taxpayer's case is within its discretion.").

Petitioner and NWC may well be right that the statute would offer stronger incentives to whistleblowers if FBAR civil penalties were treated like tax liabilities for purposes of determining eligibility for nondiscretionary awards under section 7623(b)(5)(B). And in that event the whistleblower law might more effectively advance the objectives that Congress envisioned for it. But if this is a gap in the statute, it is a gap that only Congress, and not this Court, can fill.

To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered for respondent</u>.