148 T.C. No. 21

UNITED STATES TAX COURT

IAN D. SMITH, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25605-15W.                        Filed June 7, 2017.

P, a whistleblower, provided information to R.  Using P's information, R commenced examinations of a taxpayer that led to the assessment and collection of almost $20 million.  R determined that slightly less than $2 million of the collected proceeds was collected using the information P provided.  R further determined that because less than $2 million was based on P's information, the $2 million threshold for application of the nondiscretionary award regime of I.R.C. sec. 7623(b) had not been met.  Accordingly, R made a discretionary whistleblower award under I.R.C. sec. 7623(a).  P argues that the "amounts in dispute" referenced in I.R.C. sec. 7623(b)(5)(B) is almost $20 million and that the threshold for use of the nondiscretionary award of I.R.C. sec. 7623(b) has been met.

Held:  The "amounts in dispute" referenced in the I.R.C. sec. 7623(b)(5)(B) threshold are the total amount of the liability that R proposed with respect to a taxpayer's examination that was commenced using the information provided by a whistleblower and

are not limited to the part of the "collected proceeds" attributable to the whistleblower's information or specific allegations.

Held, further, the $2 million threshold of I.R.C. sec. 7623(b)(5)(B) was met, and P's whistleblower award should be determined under I.R.C. sec. 7623(b).

Thomas C. Pliske and Shine Lin, for petitioner.

Richard L. Hatfield, for respondent.

OPINION

GERBER, Judge: This whistleblower award case, brought pursuant to section 7623(b)(4),[1] is before the Court on the parties' cross-motions for summary judgment. The seminal legal issue, one of first impression, concerns the interpretation of the phrase "amounts in dispute" in section 7623(b)(5)(B) for purposes of determining whether the $2 million threshold was met requiring payment of a whistleblower award under section 7623(b).

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

## Background[2]

Petitioner filed a Form 211, Application for Award for Original Information, that respondent received on August 4, 2008. On the Form 211 petitioner alleged that a business was exchanging its products or services for gift certificates and that these barter transactions were not included as part of the business' income. Petitioner also contended that customers' gift certificates were given to the business' employees as compensation and that the value of the gift certificates was not treated as includible in the employees' income (i.e., not included on Forms W-2, Wage and Tax Statement). This information was based on petitioner's personal experience. In a September 4, 2008 letter, respondent acknowledged receipt of the Form 211, assigned a number to petitioner's application, and advised that the claim would be evaluated.

Using petitioner's whistleblower information, respondent, early in 2009, initiated both an employment tax and an income tax examination of the business entity that petitioner had identified. As a result of the employment tax examination, on January 4, 2012, the business agreed to employment tax liabilities

---

[2]Respondent in his response to petitioner's motion for summary judgment stated: "In the present case, respondent and petitioner are generally in agreement as to the relevant facts * * * and the proper interpretation of * * * [the statute] presents a pure question of law."

for various taxable quarters from 2006 through 2009 in the aggregate amount of $3,094,188.12. On the same date the business also agreed to employment tax penalties for various quarters from 2006 through 2009 in the aggregate amount of $618,837.64. On January 23, 2012, respondent's employment tax revenue agent attributed $496,095, in the aggregate, of employment taxes that were assessed and collected from the subject business directly to the information provided by petitioner's whistleblower claim.

On July 17, 2013, respondent's income tax revenue agent's report proposed business income tax adjustments for "disallowed expenses of barter assets." The income tax revenue agent noted that the subject business had reported all income from barter activity but that the adjustments resulted from failure to substantiate the barter-related expenses. The amounts of those income adjustments in the report that the income tax revenue agent attributed to the barter deductions for the 2007, 2008, 2009, and 2010 fiscal years were $1,153,327, $1,263,600, $1,130,468, and $1,004,102, respectively. Those adjustments involving the disallowance of barter-related expenses ultimately resulted in the assessment and collection of income tax in the aggregate amount of $1,593,024. The income tax revenue agent also noted that the above amounts were attributable to the information in petitioner's whistleblower claim because the barter accounts had been selected for

scrutiny on account of the claim. The total income tax deficiency that was ultimately agreed to and paid by the subject business was $14,543,098, including the $1,593,024 referenced in the income tax revenue agent's report.

Respondent's whistleblower analyst (analyst) in a memorandum to his program manager stated that his "review of the employment tax adjustments supports a determination that the whistleblower information substantially contributed to the actions taken on several general ledger accounts." The analyst determined that collected proceeds subject to a whistleblower award for the employment taxes totaled $1,777,911.77. That amount exceeded the $595,314 that the employment tax examiner had determined to be attributable to the whistleblower claim. The analyst's more expansive approach included gift certificates and other items that were not specifically tied to the bartering but nonetheless generated employment tax liability as part of the completed audit process initiated by the whistleblower claim.

The analyst, however, stated that

[his] review of the income tax adjustments and Example 2 in the regulations, leads * * * [him] to the conclusion that the whistleblower submission did not substantially contribute to the income tax adjustments. The only connection between the income tax adjustments and the whistleblower submission is the services choice of general ledger accounts to examine.

The reference to "Example 2" in the analyst's statement refers to Example 2 in section 301.7623-2(b), Proced. & Admin. Regs. He also relied on section 301.7623-2(e)(2), Proced. & Admin. Regs., which contains a definition of "amount in dispute". In addition, the analyst stated: "The income tax adjustments were made based on a lack of substantiation or business purpose which is a different fact pattern than the one alleged by the whistleblower." The analyst's conclusion was that the $1,593,024 of income tax collected from the business in connection with barter accounts was not attributable to petitioner's whistleblower claim.

Accordingly, the analyst determined that of the $3,853,345.45 of employment tax, penalty and interest, only a portion, $1,771,911.77, was directly attributable to the whistleblower, resulting in a determination of a discretionary 10% award of $177,191.18 under section 7623(a). The analyst used section 7623(a) because, in his view, the "amount in dispute" was less than the $2 million section 7623(b)(5)(B) threshold so that a mandatory 15% to 30% award under section 7623(b)(1) was not warranted. With respect to the remaining tax, penalties, and interest, $2,081,433.67, the analyst determined that they had no direct relationship to the whistleblower information and therefore resulted in a discretionary 1% award of $20,814.34 under section 7623(a). In the analyst's

report in which he determined that the whistleblower's claim did not result in an income tax deficiency, it was also noted that the income tax examination of the subject business generated a $14,543,098 income tax deficiency, which the subject business ultimately agreed to and paid.

In an August 12, 2013, memorandum to his acting program manager, the analyst sought clarification on the determination of the amount to be attributed to the phrase "collected proceeds" and related matters because of the confluence of the employment and income tax deductions in the subject whistleblower's claim. The analyst explained that there was a direct relationship between the whistleblower's claim and the employment tax but not between the whistleblower's claim and the income tax. With respect to the income tax the whistleblower's claim was that the subject business had failed to report the barter transactions in income. The income tax examiner determined that the barter transactions were includible in income but disallowed certain deductions relating to the barter transactions for lack of substantiation, resulting in income tax deficiencies. The analyst questioned whether the income tax deficiencies associated with the bartering accounts of the subject business "are a part of collected proceeds, [and] can the award percentage be different for the employment tax and income tax adjustments?"

On July 27, 2015, respondent issued a Preliminary Award Recommendation Under Section 7623(a) (recommendation). The recommendation followed the analyst's determination that petitioner's total whistleblower award was to be $198,005.52 ($177,191.18 plus $20,814.34). In an August 10, 2015, letter, petitioner's counsel responded to the recommendation disagreeing with the amount of the award. In particular, petitioner's counsel contended that the award percentage should have been between 15% and 30% because the amount in dispute exceed $2 million. Petitioner's counsel raised additional questions concerning interpretation of section 7623.

In a September 4, 2015, Final Decision Under Section 7623(a), respondent advised petitioner that, after considering his counsel's contentions, the amount of the whistleblower award would remain $183,551.11 ($198,005.51 less a 7.3% sequestration reduction) (excluding any award attributable to the income tax). In addition respondent advised that the award amount would be reduced by 7.3% in accord with the Budget Control Act of 2011, as amended by the American Tax Relief Act of 2012, requiring that automatic reductions take place as of March 1, 2013, including awards paid under section 7623.

## Discussion

### I. Summary Judgment

Summary judgment is intended to expedite litigation and to avoid unnecessary and expensive trials. Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). Summary judgment may be granted where the pleadings and other materials show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b); Electronic Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). The burden is on the moving party to demonstrate that no genuine dispute as to any material fact remains and that he is entitled to judgment as a matter of law. FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74-75 (2001). The parties filed cross-motions for summary judgment and have shown and stated that there is no genuine dispute as to any material fact.

### II. Jurisdiction for Review of Whistleblower Cases

Here we consider the standards for an award and the calculation of the monetary threshold for mandatory awards under section 7623(b). We may exercise our jurisdiction to the extent authorized by Congress. Kasper v. Commissioner, 137 T.C. 37, 40 (2011). In a whistleblower action, we have jurisdiction only with respect to the Commissioner's award determination or denial thereof. Sec. 7623; Cooper v. Commissioner, 135 T.C. 70, 75 (2010). In

this case the parties are in agreement as to the information provided to respondent but disagree regarding the term "amounts in dispute" referenced in section 7623(b)(5). That section is the threshold for the mandatory award regime of section 7623(b) and therefore the calculation of the amount of the whistleblower award. Those matters are clearly within the scope of our jurisdiction authorized by Congress in section 7623(b)(4).

III. Statute and Underlying Controversies

Section 7623(a) authorizes the Secretary to pay whistleblower awards and to issue regulations with respect to the application of the enabling statute. The Secretary "is authorized to pay such sums as he deems necessary" from amounts collected in the detection of underpayments of tax. Accordingly, section 7623(a) provides the Secretary with complete discretion to pay sums, limited only to the amounts collected.

Section 7623(b)(1) and (2) specifically provides for less discretionary authority to make awards to whistleblowers and, in pertinent part, contains the following language:

SEC. 7623(b).  Awards to Whistleblowers.--

(1)  In general.--If the Secretary proceeds with any administrative or  judical action described in subsection (a) <u>based on information</u> brought to the Secretary's attention by an individual, such individual <u>shall</u>, subject to paragraph (2), receive as an award at least 15 percent but not more than 30 percent of the <u>collected proceeds</u>. * * * The determination of the amount of such award by the Whistleblower Office shall depend upon the extent to which the individual <u>substantially contributed</u> to such action.

(2)  Award in case of less substantial contribution.--

(A) In general.--In the event * * * the Whistleblower Office determines [the claim] to be based principally on <u>disclosures of specific allegations</u> (other than information provided by the individual described in paragraph (1)) * * * the Whistleblower Office may award such sums as it considers appropriate, but in no case more than 10 percent of the <u>collected proceeds</u> (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such action, taking into account the significance of the individual's information and the role of such individual * * * in contributing to such action.

[Emphasis added.]

In summary, section 7623(b)(1) provides that where respondent proceeds with an action using information supplied by an individual, the award <u>shall</u> be at least 15% but not more than 30% of the collected proceeds, depending on the extent to which the information substantially contributed to the collection.  Section 7623(b)(2) addresses circumstances where there is a less substantial contribution

on the part of a whistleblower and provides respondent, in such circumstances, with discretion to award an amount that does not exceed 10%.

Section 7623(b) is available for whistleblower awards only if the following section 7623(b)(5) thresholds are met:

> (5) Application of this subsection.--This subsection shall apply with respect to any action--

>> (A) against any taxpayer, but in the case of an individual, only if such individual's gross income exceeds $200,000 for any taxable year subject to such action, and

>> (B) if the tax, penalties, interest, additions to tax, and additional amounts in dispute exceed $2,000,000. [Emphasis added.]

Respondent concluded that the "amounts in dispute" did not exceed $2 million and, accordingly, determined that a discretionary award under section 7623(a) was appropriate. Petitioner contends that respondent incorrectly applied the section 7623(b)(5)(B) threshold to limit the determination of the award to section 7623(a). The main thrust and seminal core of petitioner's argument focuses on the $2 million threshold in section 7623(b)(5)(B) and the phrase "amounts in dispute". Specifically, petitioner contends, as a matter of first impression, that respondent has read into section 7623(b)(5)(B) a limitation with respect to the $2 million threshold by concluding that "amounts in dispute"

include only the amounts of collected proceeds for which the whistleblower provided direct or indirect information.

Under petitioner's interpretation the "amounts in dispute" in this case total $19,989,467.44, which is the combined amount of the employment and income tax deficiencies and penalties in dispute between the taxpayer and respondent because of examinations commenced on account of petitioner's whistleblower claim. Accordingly, under petitioner's interpretation section 7623(b)(1) and (2), rather than section 7623(a), would be applicable and would have resulted in a larger award. Ostensibly, and using the collected amounts attributed by respondent to petitioner's direct information, if section 7623(b)(1) applied, petitioner's award would necessarily be at least 15% of $1,771,911.77, or $265,786.76, as opposed to the 10% amount, $177,191.18, determined by respondent's Whistleblower Office.

Respondent argues that certain common words or phrases in section 7623(b)(1) require him to follow the same quantitative measure in determining the $2 million threshold of section 7623(b)(5)(B). In particular, respondent focuses on the words "any" and "action" in the context of section 7623(b)(1) as follows:

> If the Secretary proceeds with <u>any</u> administrative or judicial <u>action</u> described in subsection (a) based on information brought to the Secretary's attention by an individual, such individual shall, subject to paragraph (2), receive an award . . . [t]he determination of the amount of such award by the Whistleblower Office shall depend upon

the extent to which the individual substantially contributed to <u>such</u> <u>action</u>. [Emphasis added.]

Respondent goes on to contend that section 7623(b)(1) therefore defines the scope of the words "any action" for purposes of section 7623(b), and accordingly governs the use of the phrase "any action" in section 7623(b)(5). Respondent's reliance on the term "action" which appears in section 7623(b)(1), (2), and (5) as the link between those sections is misplaced.

The word "action" is used five times each in subsection (b)(1) and (2) and two times in subsection (b)(5). Subsection (a) is a historical remnant dating back to 1867, and subsection (b) was added by 2006 legislation. Subsection (a) does not contain the word "action", and it provides for a discretionary award for "detecting underpayments of tax, or detecting and bringing to trial and punishment persons guilty of violating the internal revenue laws". Accordingly "action" for purposes of subsection (b) is the detecting of underpayments of tax or violations of tax law without any qualifier as to quantity or amount.

The word "action" is used in subsection (b)(1) and (2) in connection with prescribing percentage limits for awards only from collected proceeds resulting from the action, depending on whether the whistleblower brought information or

specific allegations to respondent's attention. Further refinements involve the extent to which the individual substantially contributed to the "action".

Accordingly, the word "action" is being used in that context and does not establish another technical definition or meaning for purposes of section 7623(b) in general. The use of the word "action" in the introductory phrase to section 7623(b)(5), "[t]his subsection shall apply with respect to <u>any action</u>--(emphasis added), is in no manner linked to the concept of "collected proceeds" or substantial contribution. The word "action" is used in subsection (b)(5)(A) in the following context: "against any taxpayer, but in the case of any individual, only if such individual's gross income exceeds $200,000 for any taxable year subject to <u>such action</u>" (emphasis added). Here again, the word "action" is used without specific limitations.

We are unable to accept respondent's contention that the subsection (b)(1) determination of the size or percentage of an award applies only to those portions that were directly or indirectly attributable to the whistleblower's information or that respondent's definition of "amounts in dispute" should be employed to determine whether the $2 million threshold of subsection (b)(5)(B) has been met. The application of respondent's position in this case would lead to anomalous results. Petitioner's whistleblower claim caused the initiation of an examination

that resulted in the collection of almost $20 million of tax and penalties, almost $2 million of which was directly or indirectly attributable to petitioner's information. In spite of those results, under respondent's position the provisions of section 7623(b) would not be applicable in this case.

The current whistleblower statute was enacted in 2006 to "address perceived problems with the discretionary award regime." Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. A, sec. 406, 120 Stat. at 2958; Cooper v. Commissioner, 135 T.C. at 73. Section 7623(b) was enacted to encourage whistleblowers to provide information about the underpayment of tax and violation of tax laws. Lippolis v. Commissioner, 143 T.C. 393, 399 (2014); Cooper v. Commissioner, 135 T.C. at 73. Under the new provisions, a whistleblower generally is entitled to a minimum nondiscretionary award of 15% of the collected proceeds if the Commissioner proceeds with administrative or judicial action using information provided in a whistleblower claim. Cooper v. Commissioner, 135 T.C. at 73-74. The nondiscretionary minimum award is clearly part of the statutory regime to encourage whistleblowers.

In Lippolis, this Court considered whether the $2 million threshold of section 7623(b)(5)(B) is jurisdictional or whether it is to be asserted as an affirmative defense. Lippolis v. Commissioner, 143 T.C. at 396. In reaching the

conclusion that it is not jurisdictional, this Court stated: "The phrase 'any action' refers to 'any administrative or judicial action' with which the Secretary 'proceeds' based on information provided by a whistleblower under section 7623." Id. at 395. In that case, the Commissioner assessed and collected $844,746 from the taxpayer and, under section 7623(a), awarded $126,712 (15% of the collected proceeds), and the whistleblower sought to have the award come under section 7623(b). Accordingly, the question arose of whether the section 7623(b)(5)(B) threshold of $2 million had been met. Although this Court in Lippolis specifically did not decide what constitutes the "amounts in dispute", it left for another day the question of whether the $844,746 respondent used to compute the award constituted the entire "amount(s) in dispute".

In Whistleblower 22716-13W v. Commissioner, 146 T.C. 84 (2016), this Court considered whether Foreign Bank and Financial Accounts (FBAR) civil penalties are "additional amounts" described in section 7623(b)(5)(B) to be considered in determining whether the $2 million threshold had been met. This Court held that FBAR civil penalties are not additional amounts that could be counted in determining whether the $2 million threshold has been met. Id. at 85. In that case, the Court did not consider or decide the question before us in petitioner's case, i.e., whether the amount in dispute should include only the

amounts that would be subject to the section 7623(b)(1) or (2) award or should include the total amount in dispute between the Commissioner and the taxpayer. Id. at 92.

In Whistleblower 21276-13W v. Commissioner, 147 T.C. 121 (2016), this Court considered whether the term "collected proceeds" as used in section 7623(b)(1) should be construed, as contended by respondent here, as limited to having been collected pursuant to the Internal Revenue Code or whether it should be more broadly defined. In particular, we had to decide whether criminal fines and civil forfeitures are "collected proceeds" for purposes of subsection (b)(1). Id. at 123. In that case, the Commissioner took the limited view that although tax restitution of $20,000,001 constituted "collected proceeds", the remaining $54,131,693 of criminal fines and civil forfeitures did not. Id. In Whistleblower 21276-13W, this Court held that the whistleblower's more expansive view of "collected proceeds" was correct and that it included the $54,131,693 amount along with the $20,000,001, resulting in a $17,791,607 whistleblower award computed at the 24% rate that had been agreed to by the parties. Id. at 140.

We again note that the Commissioner's discretionary authority to pay awards to "whistleblowers" dates back to legislation enacted in 1867. Act of Mar. 2, 1867, ch 169, sec. 7, 14 Stat. at 471, 473; Whistleblower 22716-13W v.

Commissioner, 146 T.C. at 88. That discretionary authority became section 7623(a), and it was not subject to judicial review until 2006 when section 7623(b) was added. When Congress added the nondiscretionary award regime with minimum percentages for awards, it also set a monetary threshold that must be met before the mandatory provisions of subsection (b)(1) and (2) come into play. That monetary threshold was established to target large dollar cases.[3] It also appears that the 2006 mandatory award additions to section 7623 were intended to motivate whistleblowers to come forward so that additional collections of tax would occur.

In interpreting the term "amounts in dispute" as used in section 7623(b)(5)(B), we begin with the statute. Greyhound Corp. v. Mt. Hood Stages, Inc., 437 U.S. 322, 330 (1978). The phrase "amounts in dispute" is not used in any other context in section 7623, and the parties have not contended that the phrase is a term of art and/or that the phrase had been used in other sections of the Internal Revenue Code. Section 7623(b)(5)(B) is plain and has a clear meaning in the context of section 7623 and its intended congressional purpose. United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (citing Caminetti v. United

---

[3]See Ron West, John H. Skarbnik, & Frank L. Brunetti, "A Primer for Tax Whistleblowers", Taxes--The Tax Magazine, at 27, 30 (April 2012).

States, 242 U.S. 470, 485 (1917)).  Where the statute has been expressed in plain terms, that language should be given effect.  Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 570 (1982) (citing Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)).

The section 7623(b)(5)(B) phrase "amounts in dispute" is not specifically limited to only those amounts directly or indirectly attributable to the whistleblower information.  Once the monetary thresholds are met and the Government recovers "collected proceeds" resulting from the action, the mandatory provisions of subsection (b)(1) or (2) apply.  See Whistleblower 22716-13W v. Commissioner, 146 T.C. at 89.  Conversely, "collected proceeds" as used in subsection (b)(1) is limited by "resulting from the action" whereas "amounts in dispute" as used in subsection (b)(5) is not.

Here section 7623(b)(5) has a clear meaning.  Congress intended to limit the nondiscretionary award regime to larger cases.  Explicitly, section 7623(b)(5)(A) and (B) "shall apply with respect to any action--against any taxpayer, but in the case of any individual, only if such individual's gross income exceeds $200,000 for any taxable year subject to such action, and * * * if the tax, penalties, interest, additions to tax, and additional amounts in dispute exceed $2,000,000."  The first monetary threshold applies to individuals, and the second applies to all taxpayers.

Subsection (b)(5) is intended to make the nondiscretionary award program of subsection (b)(1) and (2) applicable to larger cases. Those where the "amounts in dispute" between the taxpayer and the Commissioner exceed $2 million. Once that threshold is met, then subsection (b)(1) or (2) would apply and award percentages are to be made based on the standards of those subsections.

Section 7623(b)(5) is simply a monetary threshold for application of the less discretionary whistleblower award regime. The $200,000 of gross income threshold must be met where the taxpayer is an individual, and the $2 million amount in dispute must be met for any taxpayer. The factors of section 7623(b)(1) and (2) limiting the award to a particular portion of collected proceeds focuses upon the usefulness of the whistleblower's claim and should not be a refinement of the "amounts in dispute" as used in section 7623(b)(5). The facts of this case are illustrative of that distinction. Petitioner's whistleblower claim regarding the barter and gifts caused respondent to examine those items and related accounts of the taxpayer, resulting in almost $20 million in collected tax revenue. The next statutory step would be to determine what portion of those collected proceeds resulted from the whistleblower's information or claim.

The regulation promulgated with respect to section 7623(b)(5) is section 301.7623-2(e), Proced. & Admin. Regs. Paragraph (e)(2)(i) of the regulation defines "amount in dispute" for purposes of section 7623(b)(5), as follows:

> [T]he term <u>amount in dispute</u> means the greater of the maximum total of tax, penalties, interest, additions to tax, and additional amounts that resulted from the action(s) with which the IRS proceeded based on the information provided, or the maximum total of such amounts that were stated in formal positions taken by the IRS in the action(s). * * *

Respondent's analyst relied on this regulation for determining that the $2 million threshold was not met in this case. The regulation does not support respondent's narrow view that the "amount in dispute" is limited to the portion to which award percentages are applied, as defined in section 7623(b)(1) and (2). The regulation provides instead that the amounts in dispute are the amounts that resulted from the actions with which IRS proceeded based on the whistleblower information. Accordingly, it does not follow that the limiting standards of section 7623(b)(1) and (2) providing for a percentage to be applied to the portion of "collected proceeds" to which the whistleblower's information "substantially contributed" would also apply in determining whether the initial $2 million threshold has been met. Conceptually, section 7623(b)(5) is a threshold to ensure that the less discretionary mandate of subsection (b)(1) is applied to taxpayers with a certain minimum amount of annual income or with a significant amount of tax liability.

In effect, respondent has backed into the subsection (b)(1) and (2) limitations to interpret the subsection (b)(5) threshold.

Respondent's analyst also relied on section 301.7623-2(b), Example (2), Proced. & Admin. Regs. That section addresses the concept "proceeds based on" which is an integral part of determining which percentages of section 7623(b)(1) and (2) are to be used to calculate the whistleblower award. All of the examples under section 301.7623-2(b), Proced. & Admin. Regs., are designed as guidance for determining whether whistleblower information was the source or the reason for respondent's pursuit or examination of a taxpayer. In Example 2 the Commissioner pursued a taxpayer using whistleblower information and then, by means of information requests and summonses developed additional information which the example concludes was not information that was proceeded on because of the whistleblower. That example, however was not intended to address the purely mathematical threshold of section 7623(b)(5). In the case before the Court, respondent proceeded using petitioner's information, and the examination resulted in nearly $20 million of tax in dispute, of which almost $2 million was directly or indirectly attributable to petitioner's information. Those circumstances satisfy the purely mathematical threshold of section 7623(b)(5). The next step would be to

determine what portions of the proceeds collected were substantially or less substantially attributable to petitioner's information.

Accordingly, the "amount in dispute" for purposes of section 7623(b)(5)(B) in this case was in excess of $2 million, and respondent's use of the discretionary provisions of section 7623(a) to determine the amount of the whistleblower award was in error.

Petitioner also raised the following issues in his motion for summary judgment: (1) whether "collected proceeds" includes amounts which respondent would not have collected without petitioner's whistleblower claim; (2) whether respondent applied the correct award percentages; and (3) whether respondent has the legal authority to unilaterally reduce an award by sequestration. Because we have decided that respondent's use of section 7623(a) in this case was incorrect, petitioner's motion for summary judgment will be granted in part with respect to the section 7623(b)(5)(B) threshold question. Finally, our holding that respondent should have used section 7623(b) to compute the amount of the award renders petitioner's other concerns or arguments moot until an award has been determined under section 7623(b).

To reflect the foregoing,

An appropriate order will be issued.