T.C. Memo. 2017-108

UNITED STATES TAX COURT

JAMES AWAD, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3755-14W.                    Filed June 8, 2017.

        P provided information to the IRS Whistleblower Office (WO)
regarding individuals TH and TW's alleged failure to disclose their
ownership interests in foreign bank accounts.  WO forwarded P's
information to the Large Business & International Division (LB&I),
which declined to examine TH and TW's returns.  TH died while
LB&I was considering P's information.  Thereafter TW and her adult
children filed voluntary disclosures with the Criminal Investigation
Division (CID) in which they reported income from a previously
undisclosed account at the same foreign bank P had identified.

        CID accepted the voluntary disclosures and forwarded them to
the Small Business/Self Employed Division (SB/SE) for examination.
The SB/SE examination resulted in the assessment of over $2 million
in income tax, accuracy-related penalties, and interest against TH and
TW, in addition to a title 26 miscellaneous penalty.  Although WO
forwarded P's information to SB/SE, the revenue agent who
conducted the examination denied using it.

**[\*2]**   WO also forwarded P's information to SB/SE's Estate and Gift Tax Group (E&G), which had selected TH's estate's estate tax return for examination.  The revenue agent who was conducting the examination asserted that P's information was not relevant to his investigation.  Thereafter, WO issued a determination denying P's claim for a whistleblower award.

Held:  We need not decide the standard of review in this case because we would sustain R's determination under either a de novo or an abuse of discretion standard of review.

Held, further, because the administrative action taken by the IRS against the taxpayers was not based on his information, P is not entitled to a whistleblower award.

Howard W. Gordon, Leticia Vega, and Alyssa L. Razook Wan, for petitioner.

Marianna Lvovsky, Patricia P. Davis, and John T. Arthur, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Pursuant to section 7623(b)(4), petitioner has appealed the Internal Revenue Service's (IRS) denial of his claim for a nondiscretionary

[*3] whistleblower award.[1]  The issue for decision is whether petitioner is entitled to an award under section 7623(b)(1).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated by this reference.  Petitioner resided in New York when he filed his petition.

Petitioner's Whistleblower Claim

On November 18, 2008, petitioner filed Form 211, Application for Award for Original Information, with the IRS Whistleblower Office (Whistleblower Office).  In the Form 211 petitioner implicated taxpayer husband, taxpayer wife, and their three adult children (taxpayer children) (collectively, taxpayers) as owners of undisclosed foreign bank accounts.  Petitioner alleged that taxpayer husband was likely transferring millions of untaxed dollars to these accounts.  While petitioner provided the name of the bank, he did not list any account numbers or give other identifying information about the alleged accounts.  The Whistleblower Office confirmed receipt of the Form 211 and informed petitioner that his claim had been assigned to analyst Nancy Burcham.

---

[1]  All section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*4] <u>Referral of Whistleblower Information to LB&I</u>

In February 2009 Ms. Burcham forwarded petitioner's information to the IRS Large Business and International Division (LB&I).  The matter was assigned to LB&I examiner Alan Hymes.

Mr. Hymes reviewed petitioner's information and, in June 2009, decided to accept the taxpayers' returns as filed.  In a written statement to the Whistleblower Office Mr. Hymes wrote:  "At this point there is not enough information to determine that this is a good case for the field. * * * [Petitioner] did not provide any documentation to show that the * * * account or accounts exist or that any money was transferred".

Inexplicably, LB&I allowed several months to pass before returning the case to the Whistleblower Office.[2]  The administrative record indicates that Ms. Burcham may not have received Mr. Hymes' written statement until July 2010, over a year after LB&I had made its decision.

<u>The Taxpayers' Voluntary Disclosure</u>

Meanwhile, taxpayer husband died in August 2009.  In January 2010 the surviving taxpayers filed voluntary disclosures pertaining to a previously

---

[2] In an internal memorandum Ms. Burcham stated:  "The entire casefile [sic] was received in the * * * [Whistleblower Office] a considerable time after the signing of * * * [Mr. Hymes' written statement]."

**[\*5]** undisclosed account at the same foreign bank petitioner had identified to the Whistleblower Office.[3] The taxpayers' voluntary disclosures included account information and amended returns reporting previously undisclosed income for tax years 2003 through 2008. CID accepted the taxpayers' voluntary disclosures and forwarded their case file to the IRS Small Business/Self-Employed Division (SB/SE) for examination. The matter was assigned to SB/SE revenue agent (RA) Thomas George. RA George's examination of the taxpayers' voluntary disclosure submission began in July 2010.

Referral of Whistleblower Information to SB/SE

After learning that LB&I would not be examining the taxpayers' returns, Ms. Burcham contemplated issuing a rejection letter to petitioner. Before doing so, she performed additional research and discovered that SB/SE was examining

---

[3] The IRS Criminal Investigation Division (CID) maintains a longstanding practice of voluntary disclosure whereby taxpayers can generally avoid criminal prosecution by disclosing their tax noncompliance to CID timely and completely. See Offshore Voluntary Disclosure Program Frequently Asked Questions and Answers 2014, Q&A-3. In March 2009 the IRS launched the offshore voluntary disclosure program (OVDP), a "counterpart" to this practice under which taxpayers who timely disclosed their ownership of unreported foreign bank accounts were eligible for reduced monetary penalties. See id. The extended deadline for participating in the 2009 OVDP was October 15, 2009. Id. A second OVDP (called the "Offshore Voluntary Disclosure Initiative") was initiated on February 8, 2011, and ran until September 9, 2011. Id. A third, open-ended OVDP began in 2012. Id. Q&A-1. There was no OVDP in effect during 2010.

**[*6]** the taxpayers' returns in connection with their voluntary disclosure. Consequently, in September 2010, Ms. Burcham forwarded petitioner's information to SB/SE "to determine if any of * * * [petitioner's] information was used to assist in the exams being opened on the taxpayers."

After receiving petitioner's information, SB/SE subject matter expert Frank Stamm contacted petitioner and arranged a telephone interview. During the interview petitioner further explained the basis for his allegations against the taxpayers. In an internal memorandum recounting the interview, Mr. Stamm wrote: "While he could not provide account numbers he did provide lists of shares owned in various * * * [foreign] corporations, and properties owned in the US and abroad by the taxpayers." Mr. Stamm recommended that petitioner's submission "be sent to the field for association with * * * [the taxpayers'] ongoing * * * audits."

Petitioner's information was forwarded to RA George. Thereafter RA George provided the Whistleblower Office with a written statement indicating that the sole cause of the examination was the taxpayers' voluntary disclosure. He stated: "There has been no indication in the case files that * * * [petitioner's] information initiated the investigation or assisted to gather any offshore accounts."

**[*7]**  In August 2011 taxpayer wife and an SB/SE group manager signed a Form 906, Closing Agreement on Final Determination Covering Specific Matters (closing agreement).  The closing agreement, to which taxpayer wife and the estate of taxpayer husband were parties, referenced the 2009 OVDP[4] and stated that the taxpayers' voluntary disclosure was made pursuant to that program.  In accordance therewith, taxpayer wife and taxpayer husband's estate agreed to pay a title 26 miscellaneous penalty "in lieu of any other penalties that the * * * [IRS] may impose with respect to the offshore financial arrangements that were the subject of the voluntary disclosure".  Additionally, the IRS adjusted taxpayer husband and taxpayer wife's tax liabilities for 2003 through 2008, assessing taxes, penalties, and interest in excess of $2 million.  Having reached an agreement with taxpayer wife and taxpayer husband's estate, RA George did not make any adjustments to the returns of the taxpayer children.  The examination of the taxpayers' returns was officially closed in November 2011.

Meanwhile, petitioner's whistleblower claim remained open.  In 2012 or 2013 Ms. Burcham left the Whistleblower Office, and petitioner's claim was reassigned to analyst Kenneth Chatham.  Mr. Chatham reviewed the claim file and decided to email RA George for clarification regarding whether petitioner's

---

[4]  See supra note 3.

**[*8]** information had been used during the examination. In a subsequent telephone call RA George stated that he had relied exclusively on information provided by the taxpayers and that he had not used petitioner's information.

Referral of Whistleblower Information to SB/SE Estate and Gift Tax

In August 2013 Mr. Chatham learned that SB/SE's Estate and Gift Tax Group (E&G) had selected taxpayer husband's estate's estate tax return for examination. Mr. Chatham forwarded petitioner's information to E&G.

E&G examiner James Truman did not find petitioner's information to be helpful. Mr. Truman provided the Whistleblower Office with a written statement in which he explained: "The whistleblower claim has nothing to do with the estate tax return, only income tax issues. This estate tax return should never have been classified as a whistleblower case."

Award Determination and Appeal

On January 28, 2014, the Whistleblower Office issued a determination letter to petitioner denying his claim for an award. Petitioner timely filed a petition appealing the Whistleblower Office's determination. Petitioner asserts that he is entitled to 15% to 30% of the total amounts collected from: (1) the assessment of additional income tax, accuracy-related penalties, and interest for 2003 through 2008 against taxpayer husband and taxpayer wife; (2) "FBAR penalties" against

**[\*9]** taxpayer husband and taxpayer wife; and (3) additional estate tax for which taxpayer wife's estate is liable on account of the inclusion of the foreign bank account in her gross estate.[5]

A trial was held in Miami, Florida. Thereafter both parties filed opening and answering briefs.

## OPINION

We decide whether petitioner, a whistleblower, is entitled to a section 7623(b) award after a trial on the merits. Because petitioner failed to prove that the IRS proceeded with administrative or judicial action against the taxpayers on the basis of his information, we hold that he is not.

I.    Statutory Framework

The IRS has long had authority to pay discretionary awards to persons, now called "whistleblowers", who provide information leading to the recovery of unpaid taxes. See sec. 7623 (1954). In response to concerns about the management of the discretionary award regime, Congress enacted legislation in 2006 to address perceived problems with the whistleblower program. Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, div. A, sec. 406, 120 Stat. at 2958 (effective Dec. 20, 2006). The 2006 legislation added to section 7623 a new

_____

[5] Taxpayer wife died in July 2014.

**[*10]** subsection (b), which requires the payment of nondiscretionary whistleblower awards in specified circumstances and provides this Court jurisdiction to review IRS determinations regarding such awards. See Cooper v. Commissioner, 135 T.C. 70, 73 (2010).

Section 7623(b)(1) requires payment of an award if the IRS "proceeds with any administrative or judicial action" to collect taxes "based on information brought to the Secretary's attention by an individual". The award amount must be at least 15% and not more than 30% of "the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action" or settlement thereof. Id. The determination of the amount of the award "shall depend upon the extent to which the individual substantially contributed to such action."[6] Id.

Section 7623(b)(5) defines the scope of claims that are subject to the nondiscretionary award program established in subsection (b). The IRS must pay claims on a nondiscretionary basis only with respect to actions against a taxpayer

---

[6] The IRS may determine a lower percentage award if the whistleblower's information is derived from publicly disclosed allegations (unless such information "was originally provided by" the whistleblower) or if the whistleblower planned and initiated the activities leading to the underpayment of tax. Sec. 7623(b)(2) and (3). The IRS is directed to deny an award altogether if the whistleblower is convicted criminally for planning and initiating such activities. See sec. 7623(b)(3).

**[*11]** whose "gross income exceeds $200,000 for any taxable year subject to such action" and only "if the tax, penalties, interest, additions to tax, and additional amounts in dispute exceed $2,000,000." Sec. 7623(b)(5)(A) and (B). The IRS must raise a failure to satisfy these monetary thresholds as an affirmative defense. See Lippolis v. Commissioner, 143 T.C. 393, 400 (2014).

## II. Jurisdiction and Standard of Review

Section 7623(b)(4), captioned "Appeal of award determination", governs our jurisdiction over whistleblower claims. It provides: "Any determination regarding an award under paragraph (1), (2), or (3) may, within 30 days of such determination, be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." A "determination regarding an award" means a determination as to the amount of an award or a determination to deny an award. Cooper v. Commissioner, 135 T.C. at 75. Thus, this Court has jurisdiction under section 7623(b)(4) where, as here, (1) the IRS makes a determination denying a claim for award under section 7623(b); and (2) a petition invoking our jurisdiction over that matter is timely filed. See Kasper v. Commissioner, 137 T.C. 37, 41 (2011).

Neither the text nor the legislative history of section 7623(b)(4) specifies the standard of review that the Court is to apply in reviewing IRS determinations.

[*12] Petitioner contends that de novo review is appropriate, while respondent argues for an abuse of discretion standard. We need not resolve this question today since we would sustain respondent's determination under either standard of review.[7] See Golub v. Commissioner, T.C. Memo. 2013-196, at *7.

III.    Analysis

Respondent's determinations are presumptively correct, and petitioner bears the burden of proving that those determinations are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 7623(b) provides: "If the Secretary proceeds with any administrative or judicial action * * * based on information brought to the Secretary's attention by an individual, such individual shall * * * receive as an award at least 15 percent but not more than 30 percent of the collected proceeds * * * resulting from the action (including any related actions) or from any settlement in response to such action." Section 301.7623-2, Proced. & Admin.

_____

[7] At trial we heard testimony from petitioner and Mr. Chatham. Neither party argued that we could not consider this testimony because it was outside the administrative record. Nor did the parties attempt to introduce other evidence outside the administrative record. Accordingly, we need not decide whether our scope of review is limited to the administrative record.

**[\*13]** Regs.,[8] defines terms used in section 7623(b) and the regulations interpreting it. The IRS "proceeds based on information provided by a whistleblower" when, for example, "the IRS initiates a new action, expands the scope of an ongoing action, or continues to pursue an ongoing action, that the IRS would not have initiated, expanded the scope of, or continued to pursue, but for the information provided." Sec. 301.7623-2(b), Proced. & Admin. Regs.

In sum, petitioner's entitlement to an award turns on two issues: first, whether there was a collection of proceeds; and, second, whether that collection was attributable to the IRS' proceeding with administrative or judicial action on the basis of petitioner's information. See Whistleblower One 10683-13W v. Commissioner, 145 T.C. 204, 206 (2015).

A.    Collection of Proceeds

Whether there was a collection of proceeds from the taxpayers is not in serious dispute. The parties stipulated that the IRS' adjustment of taxpayer husband and taxpayer wife's tax liabilities for 2003 through 2008 resulted in the

---

[8] Pursuant to sec. 301.7623-2(f), Proced. & Admin. Regs., the section is effective on August 12, 2014, and applies to information submitted on or after that date and to claims for awards that are open on that date. Respondent concedes that the regulations are not controlling here because the petition was filed before the effective date of the regulations. Nevertheless, we find the above-quoted wording instructive. We express no opinion on the validity of other wording in sec. 301.7623-2(b), Proced. & Admin. Regs., or its applicability in other contexts.

[*14] assessment of over $2 million in tax, penalties, and interest. Furthermore, in their closing agreement, taxpayer wife and taxpayer husband's estate agreed to pay, and the IRS agreed to accept, a title 26 miscellaneous penalty for the 2007 tax year "in lieu of any other penalties that the * * * [IRS] may impose with respect to the offshore financial arrangements that were the subject of the voluntary disclosure". Respondent has not claimed that the taxpayers failed to pay these sums. We therefore find that there was a collection of proceeds from the taxpayers.

B.    Administrative or Judicial Action

Next we must decide whether the collection of the above proceeds was attributable to the IRS' proceeding with administrative or judicial action on the basis of petitioner's information. Our inquiry here turns on whether petitioner's information had any effect on the IRS' examination of the taxpayers' returns.

The record shows that, on three separate occasions, the Whistleblower Office forwarded petitioner's information to other operating divisions of the IRS for further investigation: first, to LB&I in February 2009; then, to SB/SE in September 2010; and finally, to E&G in August 2013. We address each referral in turn.

**[*15]**      1.      <u>LB&I Referral (February 2009)</u>

With respect to the LB&I referral, a representative of that division reviewed petitioner's information and decided not to examine the taxpayers' returns. Nothing in the record indicates that LB&I later changed course. Because LB&I did not proceed with administrative or judicial action against the taxpayers, petitioner is not entitled to an award on the basis of this referral. See <u>Cooper v. Commissioner</u> (<u>Cooper II</u>), 136 T.C. 597, 601 (2011) ("[W]histleblower awards are preconditioned on the Secretary's proceeding with an administrative or judicial action.").

2.      <u>SB/SE Referral (September 2010)</u>

Unlike LB&I, SB/SE opted to examine the taxpayers' returns. The parties disagree about whether petitioner's information prompted and/or facilitated the examination. Under respondent's theory of the case, the taxpayers' voluntary disclosure was the sole cause of the examination and resulting adjustments. Respondent contends that there is no evidence that RA George or anyone else at SB/SE used petitioner's information during the examination.

Conversely, petitioner argues that his information prompted the examination of the taxpayers' returns and the adjustments that followed. Under petitioner's theory of the case, the IRS had received his information about the taxpayers'

**[\*16]** undisclosed bank accounts before it accepted their voluntary disclosure. By

admitting the taxpayers into the OVDP when it was already on notice of the their

noncompliance, the IRS disregarded its own rules and procedures.[9] Such

disregard, petitioner argues, is evidence that the IRS shepherded the taxpayers into

the OVDP in order to avoid paying him an award.[10] Petitioner cites respondent's

apparent refusal to provide him with documents concerning the taxpayers'

acceptance into the OVDP as evidence of this scheme.

On the basis of the record before us, we disagree with petitioner. In a

written statement to the Whistleblower Office, RA George stated that there was no

evidence in his case file that petitioner's information had prompted the

examination. RA George also confirmed to Mr. Chatham that he did not use

petitioner's information during his examination of the taxpayers' voluntary

disclosure submission. There is nothing in the record that shows or even suggests

otherwise. Also absent from the record is any evidence of a causal connection

---

[9] Internal Revenue Manual (IRM) pt. 9.5.11.9(3) (Dec. 2, 2009) states that a voluntary disclosure must be timely. A voluntary disclosure is timely if received before the IRS "has received information from a third party (e.g., informant, other governmental agency, or the media) alerting the IRS to the specific taxpayer's noncompliance." Id. pt. 9.5.11.9(4)(b).

[10] Petitioner also argues that the taxpayers were ineligible for the OVDP because they submitted their voluntary disclosure after the extended deadline for the 2009 OVDP and before the start of the 2011 OVDP.

**[\*17]** between petitioner's whistleblower submission and the taxpayers' decision to come forward to the IRS.[11]

Furthermore, the IRS' purported disregard of its own rules in accepting the taxpayers' voluntary disclosure does not support the inference that the IRS used the OVDP as a cover for denying petitioner an award. For one, the rule petitioner primarily relies on is found in the Internal Revenue Manual (IRM). See supra note 9. It is a well-settled principle that the IRM does not have the force of law and is not binding on the IRS. McGaughy v. Commissioner, T.C. Memo. 2010-183, slip op. at 17; see United States v. Caceres, 440 U.S. 741 (1979); Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir. 2006), aff'g T.C. Memo. 2004-13. Second, Congress explicitly authorized the IRS to enter into closing agreements like the one it reached with the taxpayers. See sec. 7121 (authorizing the IRS to enter into a written closing agreement "with any person relating to the liability of such person * * * in respect of any internal revenue tax for any taxable period"). Such agreements "may be used for procedural economy, or to prevent a dispute from arising." United States v. Nat'l Steel Corp., 75 F.3d 1146, 1151 (7th Cir.

---

[11] Accordingly, we need not decide whether the IRS "proceeds with administrative or judicial action" based on a whistleblower's information when: (1) the IRS examines a taxpayer's return in connection with a voluntary disclosure and (2) the disclosure was prompted by the taxpayer's discovery that an informant had named him or her in a whistleblower submission.

[*18] 1996). We cannot conclude that the exercise of this authority, absent proof of any actual wrongdoing, is evidence of a scheme to deprive petitioner of an award.

Nor can we conclude that respondent's apparent refusal to provide petitioner with certain documents evidences such a scheme. If a party is troubled by another party's response to a discovery request, Rule 72(b)(2) permits the requesting party to file an appropriate motion with the Court. See Whistleblower One 10683-13W v. Commissioner, 145 T.C. at 207 (granting a whistleblower's motion to compel the production of documents and responses to interrogatories). Having proceeded to trial without taking this step, petitioner cannot cite the failure to produce documents as grounds for requesting a negative inference against respondent. Accordingly, petitioner is not entitled to an award on the basis of the referral to SB/SE.

### 3. E&G Referral (August 2013)

In a written submission to the Whistleblower Office, an E&G examiner stated that petitioner's information "has nothing to do with * * * [taxpayer husband's estates's] estate tax return, only income tax issues" and that "[t]his estate tax return should never have been classified as a whistleblower case." There is no evidence that E&G later changed course. Because E&G did not

**[*19]** initiate, expand the scope of, or continue to pursue its examination of taxpayer husband's estate's estate tax return on account of petitioner's information, petitioner is not entitled to an award on the basis of this referral.

IV.    Conclusion

Because the administrative action taken by the IRS against the taxpayers was not based on his information, petitioner is not entitled to a whistleblower award.  Accordingly, we sustain respondent's determination.

The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.