T.C. Memo. 2017-181

UNITED STATES TAX COURT

WHISTLEBLOWER 14376-16W, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14376-16W.                    Filed September 18, 2017.

<u>Sealed</u>,[1] for petitioner.

<u>Marianna Lvovsky</u> and <u>Ashley M. Bender</u>, for respondent.

MEMORANDUM OPINION

THORNTON, <u>Judge</u>:  This whistleblower action was commenced pursuant

to section 7623(b)(4).[2]  Petitioner's whistleblower award claim relates to a primary

_____

[1]The name of petitioner's counsel has been omitted in furtherance of
protecting petitioner's identity.

[2]Unless otherwise indicated, all section references are to the Internal
                                                          (continued...)

**[\*2]** individual taxpayer (taxpayer 1) and two related business entities (taxpayer 2 and taxpayer 3).[3]

On December 21, 2016, respondent filed a motion for summary judgment supported by a declaration submitted by Senior Tax Analyst Kenneth J. Chatham (STA Chatham). STA Chatham's declaration states that he was assigned to process petitioner's whistleblower award claim in April 2015 and describes the events (with review of the documents in the Whistleblower Office administrative file) that led him to recommend to the Director of the Whistleblower Office that petitioner's whistleblower award claim be denied. In the motion, supported by the declaration, respondent contends that he is entitled to summary judgment as a matter of law because petitioner has not met the threshold requirements for a whistleblower award under section 7623(b) and is therefore not entitled to such an award. More specifically, respondent maintains that the Internal Revenue Service (IRS) did not initiate an administrative or judicial action using petitioner's information and did not collect proceeds resulting from any such action. Instead,

---

[2](...continued)
Revenue Code, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]We refer to the target taxpayers in generic terms to protect petitioner's identity and the identities of nonparty taxpayers. See Rule 345(b).

[*3] respondent alleges that taxpayers 1, 2, and 3 requested to participate in and were accepted into the IRS Voluntary Disclosure Program (VDP).

On March 16, 2017, petitioner filed a response to respondent's motion for summary judgment. In the response petitioner avers that there are genuine issues of material fact regarding whether, on the basis of petitioner's whistleblower award claim, the IRS took administrative action, including by revealing the existence of a whistleblower to the taxpayer(s) and by leveraging petitioner's whistleblower status to bring the taxpayer(s) into compliance. Petitioner contends that the IRS abused its discretion by allowing taxpayers 1, 2, and 3 to enter the VDP after petitioner had submitted the whistleblower award claim.

On May 5, 2017, respondent filed a reply to petitioner's response and a declaration submitted by Revenue Agent Chris R. Martin (RA Martin). In his reply respondent does not dispute that the IRS took administrative action against taxpayers 1, 2, and 3. Respondent asserts, however, that this action was based not on petitioner's information but rather on the taxpayers' voluntary disclosure. Respondent also does not dispute that the IRS used petitioner's information to create information document requests (IDRs) and to validate the taxpayers' responses to those IDRs. Respondent also does not dispute that the IRS disclosed to taxpayer 1 that it had derived from another source information regarding

[*4] taxpayer 1's return. Finally, respondent admits that the IRS collected taxes, interest, and penalties from taxpayer 1 but alleges that the collected proceeds were based not on petitioner's information but rather on taxpayer 1's voluntary disclosure. Respondent further alleges that no taxes, penalties, or interest were assessed against taxpayer 2 or 3 or any other taxpayer in connection with the examination of taxpayers 1, 2, and 3. In a footnote respondent states:

> While respondent did not abuse his discretion by denying petitioner's claim for award, even if respondent had used petitioner's information, any award paid to petitioner would have been purely discretionary under section 7623(a), as the total amount in dispute with Taxpayer 1 falls well below the threshold requirement of $2,000,000 in dispute, required by section 7623(b)(5) for a mandatory award.

On July 5, 2017, petitioner filed a sur-response to respondent's motion for summary judgment. In the sur-response petitioner argues that respondent's foregoing statement is "cloaked as an unpled affirmative defense". The sur-response states that petitioner "heartily objects to Respondent's late-game attempt to circumvent its affirmative defense pleading and proof obligations." Petitioner also asserts that one of the exhibits attached to the declaration in support of respondent's reply differed from the same exhibit provided to petitioner through informal discovery.

**[*5]**  On July 5, 2017, petitioner also filed a motion to compel production of documents.  In the motion to compel petitioner again acknowledges and opposes respondent's attempt to raise an affirmative defense.

Background

The following facts, drawn from the pleadings and other documents in the record in this case, are not in dispute.

On December 13, 2010, the Whistleblower Office received from petitioner a Form 211, Application for Award for Original Information, alleging that during taxable years 2007, 2008, 2009, and 2010 taxpayer 1 had unreported income from personal investments and interests in related business entities, naming two specific business entities:  taxpayer 2 and taxpayer 3.  The Whistleblower Office assigned claim No. 2011-001890 to petitioner's claim.

On January 27, 2011, the IRS Criminal Investigation Division (CID) received from taxpayer 1 a VDP request also covering taxpayers 2 and 3.  Taxpayer 1 made the VDP request in response to a letter that taxpayer 2 received from the IRS stating that no tax return had been received for taxable year 2008.[4]

---

[4]The attachment to the Forms 11369, Confidential Evaluation Report on Claim for Award, states that on January 11, 2013, taxpayer 2 "received a letter from the IRS because no 2008 * * * [tax return] was received".  Although the year is stated as 2013, the statement is listed in a timeline of events with the

(continued...)

**[\*6]** Taxpayer 1 provided no tax returns, estimates of income, or other documents with the letter.

On March 29, 2011, the Whistleblower Office forwarded petitioner's Form 211 to CID via email.

On May 12, 2011, taxpayer 1 submitted a letter to the VDP. As with the letter submitted on January 27, 2011, taxpayer 1 provided no tax returns, estimates of income, or other documents with the May 12, 2011, letter. On or about May 20, 2011, taxpayer 1's VDP request was closed by CID as a direct referral to the IRS Small Business/Self-Employed (SBSE) Examination Division.

On June 1, 2011, after receiving no response from CID, the Whistleblower Office sent a followup email to CID regarding petitioner's claim. On June 2, 2011, CID responded to the Whistleblower Office, stating that it intended to forward petitioner's claim to the field and requesting that all supporting information be forwarded to CID.

On July 26, 2011, CID received petitioner's whistleblower award claim submission. On February 3, 2012, CID completed a Form 11369 with respect to

[4](...continued)
immediately preceding event dated December 1, 2010, for the filing of the Form 211 and the subsequent event dated January 27, 2011, indicating the VDP request had been received. Therefore, we conclude it was January 11, 2011, when taxpayer 2 received the letter stating no tax return had been filed for 2008.

**[\*7]** taxpayer 1.[5] None of the boxes on the Form 11369 were marked indicating that "the case was surveyed or not examined". An attachment to the Form 11369 explains that before CID received the referral from the Whistleblower Office, taxpayer 1 had requested to be and had been accepted into the VDP.

On February 10, 2012, the Whistleblower Office referred petitioner's whistleblower award claim submission to SBSE and included a referral memorandum which indicated that CID had declined the case and that taxpayer 1 had filed with the VDP in 2011.[6] RA Martin began his examination for taxpayer 1 on July 30, 2012, and maintained an examining officer's activity record (EOAR) for taxpayer 1.[7] In an entry dated July 30, 2012, RA Martin wrote on the EOAR for taxpayer 1: "Based on file, Form 211 was filed before voluntary disclosure so voluntary disclosure is not valid."[8]

---

[5]Although petitioner's Form 211 named taxpayers 1, 2, and 3, the IRS focused mainly on taxpayer 1 in its analysis and documents. CID did not complete Forms 11369 for taxpayers 2 and 3.

[6]The referral memorandum made no reference to taxpayers 2 and 3.

[7]RA Martin also maintained barebones EOARs for taxpayers 2 and 3 consisting of four dated entries indicating RA Martin did a preaudit review, issued no change reports, and closed the cases.

[8]Internal Revenue Manual pt. 9.5.11.9(3) (Dec. 2, 2009) states that a voluntary disclosure must be timely. A voluntary disclosure is timely if received

(continued...)

[*8]   On August 28, 2012, RA Martin emailed the Whistleblower Office to inquire whether the whistleblower information could be shared with taxpayer 1 or taxpayer 1's representative, stating: "The REP wants a copy of all the whistleblower info to prepare returns." Also on August 28, 2012, RA Martin informed taxpayer 1's representative that taxpayer 1 was not eligible for the VDP.

On September 18, 2012, RA Martin's manager informed taxpayer 1's representative that the IRS "would follow the spirit of the law and honor the voluntary disclosure" even though there was a whistleblower involved.

RA Martin conducted his examinations for taxpayers 1, 2, and 3 as voluntary disclosures. In his declaration RA Martin states:

> During the course of my examination of Taxpayer 1, I used petitioner's information for the sole purpose of verifying whether Taxpayer 1 had any income that was not reported on * * * [the] filed returns. To that end, petitioner's information was used to write Information Document Requests ("IDRs") that were issued to Taxpayer 1. Those IDRs inquired about specific items listed in petitioner's claim information, which were not reflected on Taxpayer 1's returns. However, the IDR responses, and further work in my examination only served to confirm that Taxpayer 1 had no unreported income. All of Taxpayer 1's income was reported on * * * [the] returns.

---

[8](...continued)
before the IRS "has received information from a third party (e.g., informant, other governmental agency, or media) alerting the IRS to the specific taxpayer's noncompliance." Id. pt. 9.5.11.9(4)(b).

[*9]   RA Martin's EOAR for taxpayer 1 states that he issued an IDR on March 15, 2013, and thereafter, on April 1, 2013, he received and processed delinquent returns from taxpayer 1.  That EOAR also states that RA Martin issued another IDR on May 19, 2014.  During his examination RA Martin prepared Forms 4549, Income Tax Examination Changes, for taxpayer 1 for the taxable years listed on petitioner's whistleblower claim.  The Forms 4549 indicate that for tax years 2007, 2008, and 2009 taxpayer 1 owed taxes, penalties, and interest of $47,594.69, with no amount owed for 2010.  The Forms 4549 also indicate, however, that taxpayer 1 had "total corrected tax liabilit[ies]" of more than $1,400,000 for 2007, 2008, 2009, and 2010 without taking into account any penalties and interest.  RA Martin states in the barebones EOARs for taxpayers 2 and 3 that for taxpayers 2 and 3 the IRS did not determine an underpayment of tax or attempt to assess or collect any amount for taxable year 2007, 2008, 2009, or 2010.

Upon completing his examinations for taxpayers 1, 2, and 3, RA Martin forwarded to the Whistleblower Office three Forms 11369 dated October 1, 2014, along with attachments.  The Forms 11369 and their attachments are identical except for the target taxpayer information for taxpayers 1, 2, and 3.  Each Form 11369 indicates "Yes" next to the following statement:  "If other taxpayers or entities were directly or indirectly identified, complete a separate Form 11369 for

**[\*10]** each taxpayer whose taxes, penalties, interest, additions to tax and other amounts were collected." In the attachments to the Forms 11369 RA Martin states: "[T]he delinquent and amended returns received were accepted as filed as no omitted income was identified."

In the light of the information in the Forms 11369 and the attachments thereto, STA Chatham recommended that petitioner's claim for a whistleblower award be denied. On May 25, 2016, the Whistleblower Office issued to petitioner a final determination stating in pertinent part:

> The claim has been recommended for denial because the IRS identified the issues prior to receipt of your information and your information did not substantially contribute to the actions taken by the IRS. Prior to receipt of your Form 211 information, the IRS received substantial information on the same issues from another source. Field examination determined all examination adjustments and assessments from the information provided by this other source. Your information was made available but was not used to start any examinations nor to make any substantial contributions to the development of any of the issues or adjustments pursued.

Pursuant to section 7623(b)(4), petitioner timely petitioned this Court for review of the final determination. Respondent filed an answer to the petition but did not include any affirmative allegations in the answer.

**[*11]**                            Discussion

Respondent, as the moving party, bears the burden of proving that no genuine dispute exists as to any material fact and that he is entitled to judgment as a matter of law.  See FPL Grp., Inc. & Subs. v. Commissioner, 115 T.C. 554, 559 (2000); Bond v. Commissioner, 100 T.C. 32, 36 (1993); Naftel v. Commissioner, 85 T.C. 527, 529 (1985); see also Rule 121.  In deciding whether to grant summary judgment, the factual materials and the inferences drawn from them must be considered in the light most favorable to the nonmoving party.  See FPL Grp., Inc. & Subs. v. Commissioner, 115 T.C. at 559.  Factual assertions may be supported by, among other things, affidavits or declarations made on personal knowledge.  Factual assertions may also be supported by documents.  As a general rule, documents that are not part of the record must be presented to the Court, in support of a motion for summary judgment, by way of an authenticating affidavit or declaration made on personal knowledge.  See Rule 121(d); 11 James Wm. Moore, Moore's Federal Practice, para. 56.92[3], at 56-209 (3d ed. 2014).

The documents respondent has offered in support of his motion differ, even if not materially, from the documents previously exchanged by the parties.  The difference calls into question the authenticity of the documents and the veracity of

**[\*12]** the declaration purporting to offer them.⁹ Further, RA Martin's declaration does not comport with the underlying evidence, and consequently we do not take it at face value.¹⁰ <u>See</u> Fed. R. Civ. P. 56(c)(1)(B).

---

⁹Petitioner's sur-response filed July 5, 2017, points out a discrepancy between the EOAR for taxpayer 1 provided to petitioner through informal document exchange and the EOAR for taxpayer 1 filed with the Court as an exhibit to RA Martin's declaration. The Court notes on the exhibit attached to RA Martin's declaration at least three additional entries on the EOAR for February 21 and 22, 2013, and December 8, 2014.

¹⁰The Court notes that RA Martin states in his unsworn declaration under penalty of perjury in support of respondent's reply to response to motion for summary judgment:

> Taxpayer 1 submitted a voluntary disclosure application to Criminal Investigations ("CI") on January 27, 2011. * * * Taxpayer 1 submitted copies of the returns he had failed to file for tax years 2007, 2008, 2009, and 2010 along with the voluntary disclosure application.

In his attachment to the Forms 11369, RA Martin states that "there were no returns prepared, no estimates of income provided, no documents provided" with the voluntary disclosure filings received on January 27 and May 12, 2011, from the representative of taxpayers 1, 2, and 3. In fact, RA Martin's EAOR for taxpayer 1 states that he "received and processed the delinquent returns and checks" on April 1, 2013.

In his declaration RA Martin further states:

> At the conclusion of my examinations, I completed three Forms 11369, Confidential Evaluation Report on Claim for Reward[,] * * * and signed the Forms 11369 <u>on February 3, 2010</u>, before returning them to the * * * [whistleblower office]. The Forms 11369 referenced above, were attached to respondent's December 21, 2016,

(continued...)

[*13] Petitioner's entitlement to an award under section 7623(b) turns on whether the IRS instituted an administrative or judicial action against taxpayer 1, 2, or 3 using petitioner's information and whether the IRS collected proceeds using petitioner's information. See Whistleblower One 10683-13W v. Commissioner, 145 T.C. 204, 206 (2015). In Awad v. Commissioner, T.C. Memo. 2017-108, at *16-*17, the Court found that although the whistleblower claim preceded the taxpayers' entry into the VDP, the whistleblower's information (1) did not cause the entry into the VDP and (2) was not used in the examination of the taxpayers' voluntary disclosure. This case differs from Awad in that on the record before us we are unable to conclude that there is no causal connection between petitioner's whistleblower claim and the collected proceeds. Further, we are unable to conclude that petitioner's whistleblower information was not used in the examination of the taxpayers' voluntary disclosure. Drawing all factual inferences in the light most favorable to petitioner, we cannot conclude that respondent did not proceed with an administrative or judicial action using the information

---

[10](...continued)
Motion for Summary Judgment as Exhibit G. [Emphasis added.]

February 3, 2010, predates petitioner's December 13, 2010, claim for a whistleblower award. Although Exhibit G to the motion for summary judgment does in fact include three Forms 11369, each is signed and dated October 1, 2014.

**[\*14]** petitioner provided and did not collect proceeds using petitioner's information. Consequently, we will deny respondent's motion for summary judgment.

As previously noted, respondent has asserted, in a footnote in his reply to petitioner's response to the motion for summary judgment, that the $2 million threshold of section 7623(b)(5)(B) has not been met. In <u>Lippolis v. Commissioner</u>, 143 T.C. 393, 400 (2014), we held that the requirement in section 7623(b)(5)(B) that an award shall not be made unless more than $2 million is in dispute is not jurisdictional but rather is an affirmative defense. Rule 36(b) provides that "the answer shall contain a clear and concise statement of every ground, together with the facts in support thereof on which the Commissioner relies and has the burden of proof." The Commissioner bears the burden of proof with respect to any affirmative defense or new matter raised in the answer. Rule 142(a)(1); <u>see also</u> <u>Lippolis v. Commissioner</u>, T.C. Memo. 2017-104, at \*8. Respondent has not asserted the $2 million threshold of section 7623(b) as an affirmative defense in his answer or any amendment to answer.

In a trifecta of opinions issued June 7, 2017, the Court clarified the threshold requirements in section 7623(b)(5)(B). In <u>Smith v. Commissioner</u>, 148 T.C. __, __ (slip op. at 23-24) (June 7, 2017), the Court held that the "amount in

[*15] dispute" referenced in section 7623(b)(5)(B) refers to the total amount of the liability that the IRS proposed with respect to a taxpayer's examination commenced using the information provided by a whistleblower.  In Lippolis v. Commissioner, at *11, the Court denied summary judgment on the ground that the facts alleged by the IRS in its motion for summary judgment did not preclude the existence of other records showing that the amount in dispute exceeded $2 million. In Gonzalez v. Commissioner, T.C. Memo. 2017-105, at *9-*10, the Court stated:

> Absent an affidavit or a declaration from an appropriate IRS representative stating that a diligent and comprehensive search of IRS records has been conducted, all appropriate personnel have been contacted, and there is no record that the IRS has asserted an underpayment of tax or made any effort to assess or collect tax in excess of $2 million from the taxpayers identified in petitioner's claims or any taxpayers related to those taxpayers, respondent has failed to show that there is no dispute as to a material fact and that a decision may be rendered in his favor as a matter of law.  * * *

> To reflect the foregoing,

An order will be issued denying respondent's motion.